1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ROXANNE TORQUATO,                    Case No. 17-cv-02127-BAS-NLS

                         Plaintiff,        **ORDER:**
12

13      v.                                **(1) GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY
14                                             JUDGMENT (ECF No. 9);**

15  NANCY A. BERRYHILL, Acting
    Commissioner of Social Security,      **(2) DENYING DEFENDANT'S
16                                             MOTION FOR SUMMARY
                         Defendant.            JUDGMENT (ECF No. 10);
17                                             AND**

18
                                          **(3) REMANDING ACTION
19                                             FOR FURTHER
                                               PROCEEDINGS**
20

21

22

23          Plaintiff Roxanne Torquato seeks judicial review of a final decision by the

24  Acting Commissioner of Social Security ("Commissioner") denying her application

25  for disability insurance benefits under Title II of the Social Security Act ("the Act"),

26  42 U.S.C. §§ 401–433.  The Court has jurisdiction to review the Commissioner's

27  final decision pursuant to 42 U.S.C. § 405(g).

28

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 9) and **DENIES** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 10). The matter will be remanded for further proceedings.

## I. BACKGROUND

### A. Plaintiff's Condition

Torquato alleges her disability commenced on August 17, 2012, at which time she was 56 years old. (Administrative Record ("AR") 55, 124, ECF No. 7.) Torquato is a high school graduate with about three years of college. (AR 40.) Prior to the onset of her alleged disability, Torquato worked as a registered sales assistant for a broker at Wells Fargo Advisors. (AR 41.) She testified that she stopped working after being terminated for poor work performance due to her depression and anxiety. (AR 141.)

The administrative record and evidence presented demonstrate Torquato's mental health impairments. Torquato alleged disability due to depression and anxiety. (AR 141.) Torquato experiences sleep disturbance, restlessness, poor stress tolerance, anxiety, heart palpitations, sweaty palms, poor concentration, weight loss, crying spells, difficulty getting out of bed in the morning, and depressed mood. (AR 42–46.) Torquato also has problems with her memory, completing tasks, concentrating, understanding, following instructions, and getting along with others. (AR 55.)

Torquato testified at the administrative hearing that she was first diagnosed with depression in 2010, but she did not pursue treatment at that time. (AR 29.) Additionally, she stated that her anxiety and depression stemmed from a difficult divorce involving an abusive husband that occurred between 2010 and 2012, as well

as from periods of bereavement from the deaths of her mother and her brother. (AR 43–44.)

Years later, Torquato continues to struggle with depression and anxiety. (AR 44.)  She now lives with a friend, but she testified that she struggles to get up in the morning, that she can no longer drive on major freeways, and that her medications diminish her sleep and mental capacities. (AR 41, 44.)  She further testified that she no longer has the energy to socialize with her friends and family, but instead watches television all day. (AR 45–46.)  Torquato also testified she had to get rid of her dog because she could no longer take care of him. (AR 46.)  Aside from Torquato's testimony, two physicians rendered opinions on her psychiatric condition.

### 1.    Treating Physician, Dr. Slotkin

Robert Slotkin, M.D., began treating Torquato for depression and anxiety in August 2012. (AR 332–33.)  His treatment notes reflect the following.  In January 2013, despite anti-depressant and anti-anxiety medications and intensive psychotherapy, Torquato was making little progress. (AR 326–29.)  She avoided social events, did not leave her home for several days, displayed a flat affect, experienced psychomotor retardation, had problems with memory and concentration, and often became confused during her sessions. (AR 326.)  In July 2013, Dr. Slotkin continued to treat Torquato on a weekly basis. (AR 328.)  Dr. Slotkin ultimately diagnosed Torquato with severe depression and anxiety, noting that she had problems with memory and concentration that prevented her from performing the complex duties of her job. (AR 359.)  Dr. Slotkin prescribed the maximum dosages of Wellbutrin, Buspar, Alprazolam, and Xanax. (AR 301.)  However, the medication had a limited effect. (AR 329.)  In March 2014, Dr. Slotkin noted that Torquato continued to be "markedly depressed" and stated that "her mental status remain[ed] severely compromised." (AR 300–01.)

In May 2016, Dr. Slotkin completed a Mental Residual Functional Capacity Questionnaire in which he discussed the signs and symptoms of Torquato's condition.

– 3 –

(AR 29, 361–66.)  Dr. Slotkin assessed Torquato with a Global Assessment of Functioning ("GAF") score of 60,[1] indicating "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." (*Id.*)  To support his diagnosis of depression, Dr. Slotkin noted Torquato's decreased energy, mood disturbance, difficulty concentrating, emotional withdrawal, memory impairment, and sleep disturbance. (AR 362.)  He assessed that Torquato was only mildly limited in terms of activities of daily living and moderately limited in terms of social functioning, but he noted that she was "markedly" limited in maintaining concentration, persistence, and pace. (AR 365.)  Dr. Slotkin estimated that Torquato would likely miss work approximately one day per month due to her symptoms. (*Id.*)

### 2.  Examining Physician, Dr. Shahla

On November 12, 2013, the state examining psychiatrist, Ramin Shahla, M.D., performed an examination on Torquato. (AR 268–71.)  Dr. Shahla diagnosed Torquato with major depressive disorder, and stated that Torquato was moderately limited in terms of completing detailed or complex tasks and maintaining concentration for at least two-hour increments. (AR 269–70.)  This opinion was based on a mental status examination where Torquato appeared alert, oriented, polite, and cooperative. (AR 269.)  During the examination, Torquato could follow three-step commands, and she displayed good attention and concentration. (*Id.*)  However, Dr. Shahla noted that Torquato was unable to complete serial 3s or 7s, and that she exhibited a dysthymic mood. (AR 269–270.)  Additionally, Dr. Shahla stated that it was "challenging" to render a psychiatric opinion in this case because at the time there were no psychiatric records for review; rather, Dr. Shahla based Torquato's assessment on Torquato's self-report and Dr. Shahla's own "brief observations." (AR 270.)

---

[1] The GAF scale is used by mental health practitioners to assess an individual's level of psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994).

– 4 –

## B. Procedural History

On August 23, 2013, Torquato filed an application for a period of disability and disability insurance benefits, alleging disability beginning on August 17, 2012. (AR 124–25.) The claim was denied on initial administrative review and on reconsideration. (AR 70–73, 75–79.) Thereafter, Torquato filed a written request for a de novo hearing before an administrative law judge ("ALJ"). (AR 80–81.) A hearing was held before ALJ Eric Benham on May 24, 2016. (AR 37–51.) In a decision dated June 15, 2016, the ALJ determined that Torquato was not disabled under the meaning of the Act. (AR 21–36.) Torquato's request for review was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* 42 U.S.C. § 405(h). Torquato now seeks judicial review under 42 U.S.C. § 405(g) of the ALJ's decision for substantial evidence and error of law.

## II. LEGAL STANDARD

Under 42 U.S.C. § 405(g), an applicant for social security disability benefits may seek judicial review of a final decision of the Commissioner in federal district court. "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

In reviewing whether the Commissioner's decision is supported by substantial evidence, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th

Cir. 1998)).  The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted).  When the evidence "can reasonably support either affirming or reversing a decision, [the court] may not substitute [its] judgment for that of the [ALJ]"; rather, the court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III.    THE ADMINISTRATIVE DECISION

### A.    Standard for Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Under the Act's implementing regulations, the Commissioner applies a five-step sequential evaluation process to determine whether an applicant for benefits qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4).  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two.

---

[2] "Substantial gainful activity" is work activity that (1) involves significant physical or mental duties and (2) is performed for pay or profit. 20 C.F.R. § 404.1510.

At step two, the ALJ must determine whether the claimant has a severe medical impairment, or combination of impairments, that meets the duration requirement in the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments is not severe, or does not meet the duration requirement, the claimant is not disabled. If the impairment is severe, the analysis proceeds to step three.

At step three, the ALJ must determine whether the severity of the claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Act's implementing regulations.[3] 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must determine whether the claimant's residual functional capacity ("RFC")—that is, the most she can do despite her physical and mental limitations—is sufficient for the claimant to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ assesses the RFC based on all relevant evidence in the record. *Id.* § 416.945(a)(1), (a)(3). If the claimant can perform her past relevant work, she is not disabled. If not, the analysis proceeds to the fifth and final step.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden through the testimony of a vocational expert, who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citations omitted). If the claimant is able to perform

---

[3] The relevant impairments are listed at 20 C.F.R. part 404, subpart P, appendix 1.

other available work, she is not disabled.  If the claimant cannot make an adjustment to other work, she is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**B.    The ALJ's Disability Determination**

On May 24, 2016, the ALJ issued a written decision concluding that Torquato was not disabled within the meaning of the Act. (AR 37–51.)  At step one, the ALJ found that Torquato had not engaged in substantial gainful activity since August 17, 2012, the alleged onset date of disability. (AR 26.)  At step two, the ALJ found that Torquato had two severe impairments: major depressive disorder and anxiety disorder. (*Id*.)  He found that Torquato's alleged physical signs and symptoms were non-severe impairments for purposes of step two.  At step three, the ALJ determined that Torquato's impairments, alone and in combination, did not meet or medically equal the severity of the impairments listed in the regulations. (AR 27.)

At step four, the ALJ assessed that Torquato retained the RFC to perform "a full range of work at all exertional levels but she is limited to unskilled work and due to medication side effects, she may not perform work that requires exposure to hazards." (AR 28.)  Ultimately, based on Torquato's RFC and the testimony of a vocational expert who considered the impact of Torquato's limitations, the ALJ concluded that Torquato could not perform her past relevant work. (AR 30.)

In determining the above RFC, the ALJ considered objective medical evidence, medical opinions, and Torquato's testimony about her symptoms. (AR 28–29.)  The ALJ applied the required two-step process to determine the credibility of Torquato's statements about her symptoms.  First, the ALJ concluded that Torquato's medical impairments could reasonably be expected to cause her alleged symptoms. (AR 29.)  Second, the ALJ evaluated the intensity, persistence, and limiting effects of these symptoms. (*Id.*)  The ALJ determined that Torquato's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

– 8 –

Finally, at step five, the ALJ called upon a vocational expert to testify as to what jobs Torquato could perform given (i) her RFC, age, education, and work experience, and (ii) the availability of suitable jobs in the national economy. The vocational expert testified that an individual with Torquato's profile could perform certain unskilled, light-level occupations such as hand packer or laundry worker. (AR 31.) Based on this testimony, the ALJ determined that Torquato was capable of adjusting to other work available in the national economy, and therefore found Torquato "not disabled" under the meaning of the Act. (*Id.*)

In reaching his decision, the ALJ gave only partial weight to the opinion of Torquato's treating physician, Dr. Slotkin, who found significant limitations in Torquato's capacity to work. (AR 30.) The ALJ instead gave "great weight" to the opinion of state examining physician Dr. Shahla, who found that Torquato had only moderate mental limitations. (*Id.*)

## IV.   DISCUSSION

Torquato challenges the ALJ's decision on the ground that, in assessing her RFC, the ALJ failed to articulate legally sufficient reasons for rejecting the opinion of her treating physician, Dr. Slotkin. Specifically, Torquato argues that the ALJ erred in giving only partial weight to this opinion. The Commissioner contends the ALJ properly evaluated Dr. Slotkin's opinion. The parties also dispute the appropriate remedy, should the Court find that the ALJ committed legal error.

### A.   Dr. Slotkin's Opinion

#### 1.   Legal Standard for Treating Physicians

The Act's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). As a general

– 9 –

1  rule, the opinion of a treating doctor is entitled to greater weight than the opinion of

2  a doctor who does not treat the claimant. *Lester*, 81 F.3d at 830 (citation omitted).

3  "The rationale for giving greater weight to a treating physician's opinion is that he is

4  employed to cure and has a greater opportunity to know and observe the patient as an

5  individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation

6  omitted).

7      The degree of deference afforded to a treating doctor's opinion depends partly

8  upon whether, and to what extent, that opinion is contradicted.  An opinion by a

9  treating doctor is given "controlling weight" if it is "well-supported by medically

10  acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent

11  with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

12  Such opinions may be rejected "only for 'clear and convincing' reasons supported by

13  substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)

14  (quoting *Lester*, 81 F.3d at 830).  In cases where a treating physician's opinion is not

15  well-supported by the medical record or is inconsistent with other substantial

16  evidence, "the opinion is not entitled to 'controlling weight.'" *Id.* (quoting Social

17  Security Ruling 96-2p at 4 (Cum. Ed. 1996), *available at* 61 Fed. Reg. 34,490, 34,491

18  (July 2, 1996)).

19      When an opinion is contradicted, "treating source medical opinions are still

20  entitled to deference," and the ALJ is required to consider the factors set out in 20

21  C.F.R. § 404.1527(c)(2)-(6) to determine how much weight to afford the treating

22  physician's medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014)

23  (quoting *Orn*, 495 F.3d at 631); 20 C.F.R. § 404.1527(c)(2).  These factors include:

24  (1) the length and frequency of the treatment relationship; (2) the nature and extent

25  of the treatment relationship; (3) the extent to which the opinion is supported by

26  medical signs and laboratory findings; (4) the consistency of the opinion with the

27  record as a whole; and (5) whether or not the treating source is a specialist regarding

28  the issue in question. 20 C.F.R. § 404.1527(c)(2)-(6).  "In many cases, a treating

– 10 –

source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Ghanim*, 763 F.3d at 1161 (quoting *Orn*, 495 F.3d at 631).

Further, in cases where a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject the treating doctor's opinion if there are "specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). The same "specific and legitimate reasons" standard is required for rejecting a treating doctor's "ultimate conclusions." *Kelly v. Berryhill*, No. 16-17173, 2018 WL 2022575, at *1 (9th Cir. May 1, 2018) (citing *Lester*, 81 F.3d at 930). An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. The ALJ "must do more than offer his conclusions"; rather, he must provide "his own interpretations and explain why they, rather than the doctors', are correct." *Id.* at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

## 2. Rejection of Dr. Slotkin's Opinion

In giving only partial weight to Dr. Slotkin's opinion, the ALJ rejected Dr. Slotkin's conclusion that Torquato's symptoms constituted marked limitations that prevented her from working. The ALJ proffered three reasons for this rejection. First, he concluded that Torquato's mental limitations were not as profound as stated by Dr. Slotkin's opinion because Torquato had never been psychiatrically hospitalized; did not have a history of suicide attempts or homicidal ideation; did not exhibit hallucinations, delusions, or other psychotic features; did not have panic or anxiety attacks; and did not show evidence of decompensation. (AR 30.) Second, the ALJ stated that Dr. Slotkin's progress notes and Torquato's reported activity level did not support "marked" limitations; rather, they supported moderate limitations with concentration, persistence, and pace. (*Id.*) Third, the ALJ concluded that Dr.

Slotkin's opinion contradicted Dr. Shahla's opinion, which the ALJ stated was consistent with both Torquato's hearing testimony and the medical record as a whole. (*Id.*)

The Court finds that none of the reasons proffered by the ALJ constitute specific and legitimate reasons supported by substantial evidence. *See Garrison*, 759 F.3d at 1012 (stating that, when a treating doctor's opinion is contradicted by another doctor's, an ALJ may only reject the treating doctor's opinion if there are "specific and legitimate reasons that are supported by substantial evidence" (quoting *Ryan*, 528 F.3d at 1198)). The Court will discuss each reason in turn.

### i. Lack of Psychiatric History

First, the ALJ's rationale regarding Torquato's lack of previous psychiatric history is an insufficient basis for rejecting Dr. Slotkin's opinion. There is no requirement that a person be psychiatrically hospitalized or exhibit psychotic symptoms to be found disabled as that term is defined in the Act. In fact, "the Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both because mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) (citing *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–00 (9th Cir. 1999)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cautioning against relying upon a claimant's failure to seek treatment for a mental disorder and noting "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness").

The ALJ also pointed out that Torquato was diagnosed with anxiety and depression in 2010, but she did not seek treatment at that time and was still able to work; therefore, the ALJ concluded Torquato's impairments would not currently

– 12 –

prevent her from working. (AR 29.)  The Court finds this rationale inadequate because it penalizes Torquato for exercising "poor judgment in seeking rehabilitation." *See Matthews*, 2012 WL 1144423, at *9 (citing *Regennitter*, 166 F.3d at 1299–00).  Indeed, Torquato testified that she was terminated from work for poor work performance due to her depression and anxiety. (AR 141.)

Further, the Court notes that even though Torquato was not hospitalized, her mental health treatment with Dr. Slotkin included multiple anti-anxiety and anti-depressant medications, as well as intensive psychotherapy, for about four years. (AR 301.)  This treatment was not "conservative" or lacking in intensity. *See, e.g.*, *Mason v. Colvin*, No. 1:12-CV-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (reasoning treatment was not "conservative" where claimant took prescription anti-depressants and anti-psychotic medication for almost two years to treat depression, anxiety, and hallucinations, and, though not hospitalized during this time, received mental health treatment by a psychiatrist and a psychiatric social worker for a fourteen-month period); *Matthews*, 2012 WL 1144423, at *9 (reasoning psychotropic medications and outpatient therapy are not conservative treatment).  For these reasons, the Court finds that Torquato's lack of psychiatric hospitalization and more serious psychiatric treatment is not a legitimate reason for rejecting Dr. Slotkin's opinion.

### ii.    Progress Notes and Activity Level

Second, the ALJ asserted that Dr. Slotkin's progress notes and Torquato's reported activity level did not support the "marked" limitations stated in Dr. Slotkin's opinion, but did support the moderate limitations asserted in Dr. Shahla's opinion. (AR 30.)  The Court finds this rationale is legally insufficient because it does not satisfy the "specific and legitimate reasons supported by substantial evidence" standard. *See Kelly*, 2018 WL 2022575, at *1 (stating that the "specific and legitimate reasons" standard is required for rejecting a treating doctor's "ultimate conclusions" (citing *Lester*, 81 F.3d at 930)).

– 13 –

A treating physician's opinion may be discounted when his opinion conflicts with his own treatment notes and other evidence. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). In *Valentine*, the ALJ satisfied the "specific and legitimate reasons" standard by identifying a specific contradiction in the physician's opinion where he "repeatedly reported [Valentine] was unemployable while acknowledging he was continuing to work full-time." *Id.* However, this case can be distinguished from *Valentine* because, unlike the physician's opinion in *Valentine*, the ALJ here did not point to any parts of Dr. Slotkin's opinion that showed a contradiction between his observations and the facts of the record. *Id.*

Rather than providing substantial evidence of contradictory observations, the ALJ only made the conclusory assertion that Dr. Slotkin's progress notes did not support "marked" limitations. (AR 30.) Dr. Slotkin's treatment summaries described Torquato as displaying a flat affect, psychomotor retardation, impaired mathematical ability, emotional and social withdrawal, and problems with memory and concentration. (AR 326, 331.) Overall, these treatment summary observations are consistent with the observations in Dr. Slotkin's progress notes, where he described Torquato as "sad and flat," experiencing "psychomotor retardation," "sleeping a lot," and "losing weight." (AR 274, 286, 302, 303.) Despite these consistencies, the ALJ pointed to one specific note where Dr. Slotkin stated "the claimant was 'extremely self-reliant and self-supporting.'" (AR 29.) The Court finds that this one cited

– 14 –

observation does not satisfy the substantial evidence requirement.[4] *See Reddick*, 157 F.3d at 725 (noting that an ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *see also Regennitter*, 166 F.3d at 1299 (stating that "conclusory reasons will not justify an ALJ's rejection of a medical opinion" (quoting *Embrey*, 849 F.2d at 421–22)).

Further, the ALJ cherry-picked the aforementioned fact from Dr. Slotkin's progress notes, while ignoring the totality of the medical evidence presented in his treatment summaries. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citing *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009))). "[C]herry-picking" is troublesome when an individual has a mental illness because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [her] overall condition." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (per curiam) (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). Thus, the Court finds that, in rejecting Dr. Slotkin's opinion, the ALJ did not provide substantial evidence to support his

---

[4] Additionally, although the ALJ described Dr. Slotkin's opinion as a "check box form" (AR 29), the Court cannot affirm the ALJ on this basis. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But, even where a treating physician's opinions are "in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes." *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (citing *Garrison*, 759 F.3d at 1014 n.17). This rationale is an insufficient basis for rejecting Dr. Slotkin's opinion because Dr. Slotkin's answers and conclusions in his Questionnaire are supported by four years of progress notes and treatment summaries regarding Torquato's mental condition. (AR 273–360.) Further, the ALJ did not expressly reject Dr. Slotkin's opinion on the ground that it was based on an invalid check-box form. *See Ghanim*, 763 F.3d at 1162 n.7; *accord Orn*, 495 F.3d at 630 (providing the court "review[s] only the reasons provided by the ALJ in the disability determination").

– 15 –

claim that Dr. Slotkin's progress notes do not support his conclusion.[5] *See Reddick*, 157 F.3d at 725 (noting that the ALJ "must do more than offer conclusions," but must put forth "his own interpretations and explain why they, rather than the doctors', are correct").

Similarly, with regard to the ALJ's claim that Torquato's reported activity level does not support "marked" limitations, the Court finds this reason insufficient. Various courts have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See, e.g.*, *Cohen v. Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 530–31 (6th Cir. 1992) (reasoning that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981))). The demands of daily living and of a competitive work environment are not facially analogous. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting that a critical difference between daily living and a full-time job is that "a person . . . is not held to a minimum standard of performance, as she would be by an

---

[5] Further, the ALJ appears to have assumed that any report of improvement, no matter how temporary, was sufficient to reject Dr. Slotkin's assessment. In this way, the ALJ views Dr. Slotkin's note that Torquato was "self-reliant and self-supporting" as evidence of her improved mental condition. (*See* AR 29.) Although it was not explicitly stated by the ALJ, this rationale is also an insufficient basis for rejecting Dr. Slotkin's opinion. *See Holohan*, 246 F.3d at 1205 (finding that observations that a claimant's condition had improved must be read "in the context of the overall diagnostic picture"); *see also Tully v. Colvin*, 943 F. Supp. 2d 1157, 1166 (E.D. Wash. 2013) ("The fact that during some doctor visits Plaintiff reported that her pain had temporarily improved, does not establish Plaintiff retained the ability to work."); *Lester*, 81 F.3d at 833 ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability.").

– 16 –

employer"). Only where a claimant's level of daily activity is inconsistent with the limitations alleged can those activities be treated as evidence of an ability to work. *See Reddick*, 157 F.3d at 722.

Here, Torquato's daily activities are not inconsistent with Dr. Slotkin's limitations precluding sustained work activity. Torquato testified that she watches television regularly, drives to the grocery store occasionally, and maintains self-care. (AR 148–64.) She currently lives with a friend and tries to help with household chores, such as cooking meals and washing clothes; however, she testified that she has trouble finishing these tasks because she cannot concentrate. (AR 44–45.) Further, Torquato testified that she can no longer drive on major freeways, and that she no longer has the energy to socialize with her friends or family; instead, she watches television all day. (AR 45–46.)

The fact that Torquato can perform certain routine daily activities does not mean that she can withstand the pressures of the workplace. The basic activities she performs are largely irrelevant to competitive work. Furthermore, Torquato can engage in all of the basic activities noted and still experience severe anxiety and depression that would limit her ability to work. Thus, Torquato's ability to engage in limited daily activities is not a legitimate reason supported by substantial evidence to reject Dr. Slotkin's opinion. *See Ghanim*, 763 F.3d at 1161 (finding that a claimant's limited daily activities—including performing basic chores and occasionally socializing—were not in tension with treating providers' opinion that claimant's depression made it unlikely he would be able to engage in meaningful employment in the near future).

### iii. Lack of Consistency with Dr. Shahla's Opinion

Third, the ALJ noted that Dr. Slotkin's opinion contradicted Dr. Shahla's opinion, which the ALJ stated was consistent with Torquato's testimony and the record as a whole. (AR 30.) The Court finds this rationale legally insufficient. "Even when contradicted by an opinion of an examining physician that constitutes

17cv2127

substantial evidence, the treating physician's opinion is 'still entitled to deference.'" *See Orn*, 495 F.3d at 632–33. Thus, it is the inconsistency between (i) Dr. Slotkin's opinion and (ii) Dr. Shahla's opinion that triggered the ALJ's obligation to provide specific and legitimate reasons to reject Dr. Slotkin's opinion altogether. That Dr. Slotkin's opinion is inconsistent with that of the examining physician is insufficient alone to justify rejecting his opinion. *See, e.g.*, *Kingsley v. Berryhill*, No. 2:14-CV-1157 DB, 2017 WL 416113, at *3 (E.D. Cal. Jan. 30, 2017) (finding the ALJ did not provide specific and legitimate reasons for rejecting a treating psychologist's opinion where the ALJ merely stated the opinion was "not consistent . . . with the opinions of the examining and non-examining physicians"); *Jaquez v. Colvin*, No. CV 15-3838 AJW, 2016 WL 3031730, at *4 (C.D. Cal. May 25, 2016) (noting examining psychiatrist's "contrary opinion, standing alone," did not justify disregarding a treating source opinion, "which still must be evaluated using the factors set forth in the regulations"); *Franco v. Colvin*, No. CV-14-01670-PHX-JJT, 2016 WL 1241881, at *9 (D. Ariz. Mar. 30, 2016) (reasoning an examining physician's "contradictory medical opinion [was] not alone enough to establish a specific and legitimate reason supported by substantial evidence to reject [the claimant's treating physician]'s opinion"). Therefore, this stated reason is insufficient.

The ALJ did not provide any other specific evidence that he believed would have substantiated the claim that Dr. Shahla's opinion was more consistent with the record than Dr. Slotkin's opinion. *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). As such, the Court finds that this

– 18 –

conclusory assertion is not a legitimate reason to reject Dr. Slotkin's opinion.[6] *See Regennitter*, 166 F.3d at 1299.

For the aforementioned reasons, the Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject Dr. Slotkin's opinion.[7] Thus, the ALJ committed legal error.

## B. Harmless Error Analysis

Having concluded that the ALJ erred in rejecting Dr. Slotkin's opinion, the Court must now determine whether such error was harmless. An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In assessing whether an error is harmless, the Court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Here, the ALJ's error was not harmless. In rejecting Dr. Slotkin's opinion, the ALJ based Torquato's RFC almost exclusively on the opinion of the state's examining psychiatrist, Dr. Shahla. (AR 30.) Dr. Shahla found only moderate mental limitations, and so the ALJ's RFC determination overstated Torquato's capacity to work. This incorrect RFC assessment, in turn, distorted the ALJ's determination of whether Torquato could adjust to other work in the national economy. *See Valentine*,

---

[6] Moreover, because Dr. Slotkin's opinion is contradicted by Dr. Shahla's opinion, the ALJ was required to consider the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6) to analyze the details of Dr. Slotkin's treatment relationship and explain the weight he was giving Dr. Slotkin's opinion. *See Ghanim*, 763 F.3d at 1161. However, the ALJ rejected Dr. Slotkin's opinion without weighing the relevant factors, and therefore committed legal error. *See Meuser*, 838 F.3d at 912.

[7] The Commissioner also contends that the ALJ's rejection of Dr. Slotkin's opinion is correct because the opinion touches on issues reserved for the agency. (Def.'s Mot. Summ. J. 5:10–23, ECF No. 10.) However, the Court does not review the ALJ's decision based on "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *See Bray*, 554 F.3d at 1225–26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The ALJ did not claim to reject Dr. Slotkin's opinion on the ground that it touched on issues reserved for the agency, and therefore the Court will not review this argument here. Further, even if the Court were to consider this argument, the ALJ need not defer to Dr. Slotkin's conclusions regarding her ultimate disability under the Act; instead, he need only defer to Dr. Slotkin's findings as to Torquato's mental state. *Id.*

574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective.").  Although the extent to which the ALJ's error infected the ultimate disability determination is unclear, the Court finds the ALJ committed harmful legal error.

## C.    Appropriate Remedy

Because there is harmful legal error, the Court must determine the appropriate remedy.  Under 42 U.S.C. § 405(g), a district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  However, even when an ALJ errs in denying benefits, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  This "ordinary remand rule" respects the Commissioner's role in developing the factual record, and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099–00. When an ALJ makes a legal error, but there are ambiguities or outstanding issues in the record, the proper approach is to remand for further proceedings, not to apply the "credit as true" rule. *See id.* at 1105; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (stating the three requirements that must be met to satisfy the "credit as true" rule).

Torquato does not demonstrate the Court should depart from the ordinary remand rule.  First, it is not clear that the ALJ would be required to find Torquato disabled if all the evidence were properly evaluated. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated.").  Second, there are essential ambiguities in the record concerning the proper weight to ascribe to the opinion of Dr. Slotkin. *See Treichler*, 775 F.3d at 1105.

– 20 –

Third, the ALJ found Torquato's symptom testimony partially not credible, and this unchallenged assessment creates "the slightest uncertainty as to the outcome of [the] proceeding." *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (quoting *Treichler*, 775 F.3d at 1101). Consequently, the ordinary remand rule applies, and the Court will remand this case for further proceedings.

## V.      CONCLUSION

For the foregoing reasons, the Court finds that the ALJ did not provide "specific and legitimate reasons supported by substantial evidence" in his decision to reject the opinion of Dr. Slotkin, Torquato's treating physician. *See Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). Further, departing from the ordinary remand rule is not appropriate.

Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further administrative proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g). Plaintiff's Motion for Summary Judgment is **GRANTED** (ECF No. 9) and the Commissioner's Cross-Motion for Summary Judgment is **DENIED** (ECF No. 10).

**IT IS SO ORDERED**.


**DATED: June 20, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv2127